UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| SARAH A. BULUT,<br><br>*Plaintiff*,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A., et al.,<br><br>*Defendants*. | Civil Action No. 18-9303<br><br>**OPINION** |
|---|---|

**John Michael Vazquez, U.S.D.J.**

Presently before the Court is Defendants JP Morgan Chase Bank, N.A. ("Chase"), Visa USA, Inc. and Visa, Inc.'s (collectively "Visa") motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 9. Plaintiff Sarah A. Bulut ("Bulut" or "Plaintiff") filed a brief in opposition (D.E. 12) to which Defendants replied (D.E. 15).[1] The Court reviewed the parties' submissions and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

---

[1] Defendants' brief in support of their motion to dismiss (D.E. 9-1) will be referred to as "Defs. Br."; Plaintiff's opposition (D.E. 12) will be referred to as "Plf. Opp."; and Defendants' reply (D.E. 15) will be referred to as "Defs. Reply."

## I. FACTUAL BACKGROUND[2] & PROCEDURAL HISTORY

This case concerns allegedly fraudulent purchases on Plaintiff's Visa-branded credit card that was issued by Chase. Chase's obligations are set forth in the cardholder agreement. Plaintiff complained about certain purchases on her credit card, which total $94,447, to Chase and Visa on numerous occasions and sought a chargeback. Plaintiff alleges that Chase and Visa knew the charges were related to Rumelia Capital, which ran an "internet-based offshore binary option scam," and that they were "emanating from foreign countries" where binary option scams were based. Compl. ¶ 12, D.E. 1. Chase reviewed Plaintiff's numerous disputes but determined that there was no evidence that a billing error occurred. As a result, the transaction charges remain on Plaintiff's account such that Plaintiff is liable for the disputed amount. *See generally* Compl.

Plaintiff's allegations are not entirely clear. At first blush, the Complaint appears to indicate that Plaintiff's credit card was used without her knowledge or authorization. Yet, as clarified in the briefing, it appears that Plaintiff fell victim to a scam; she voluntarily used her credit card to provide funds to the scammers but incurred more charges than she anticipated. Plaintiff now complains that Defendants should not have permitted her to do so or, alternately,

---

[2] The factual background is taken from Plaintiff's Complaint (D.E. 1), as well as the exhibits attached to the Complaint. D.E. 1-1, 1-2. When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the Complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Plaintiff attached the cardholder agreement and Chase's responses to Plaintiff's disputes as exhibits to the Complaint. The exhibits are referenced in the Complaint, and the parties agree that the documents are authentic and critical to deciding the current motion. Accordingly, the Court will consider the exhibits in deciding this motion to dismiss.

should have refunded her the substantial charges that she incurred on her credit card. Plaintiff does not allege that Defendants were part of the scam itself.[3]

Plaintiff's Complaint asserts the following claims: (1) violation of the New Jersey Consumer Fraud Act ("CFA" or the "Act"); (2) consumer contract containing unlawful provision (presumably under the New Jersey Truth-In-Consumer Contract Warranty and Notice Act); (3) common law fraud; (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing. *Id.* Defendant responded with the instant motion to dismiss. D.E. 9.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if

---

[3] The factual allegations should have been clear in the Complaint and intentional, misleading factual allegations could subject Plaintiff's counsel to sanctions under Rule 11 of the Federal Rules of Civil Procedure.

3

plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Therefore, an allegation of fraud must be supported by factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). This heightened pleading standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted). In addition, the requirements of Rule 9(b) apply to claims brought under the New Jersey CFA. *See Schiano v. MBNA*, No. 05-1771, 2014 WL 1430034, at *5 (D.N.J. Apr. 9, 2014).

### III. ANALYSIS

#### 1. The New Jersey Consumer Fraud Act (Count I)

The CFA "seeks to protect consumers who purchase goods or services generally sold to the public at large." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006). As "remedial legislation," the Act "should be construed liberally." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007). To state a CFA claim,

a plaintiff must allege "(1) unlawful conduct; (2) ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Id.* Unlawful conduct is defined by the Act as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J.S.A. 56:8-2. Generally, unlawful conduct falls into three categories: (1) affirmative acts; (2) knowing omissions; and (3) regulation violations. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994).

In this instance, Plaintiff's CFA claim is premised on affirmative acts and knowing omissions. Plaintiff alleges that between October 4, 2016 and February 2, 2017, Rumelia Capital illegally submitted unauthorized purchases to her credit card that totaled at least $94,447 through third-party companies. Compl. ¶ 10. Rumelia Capital allegedly runs an internet-based offshore binary option scam. ¶ 10. Plaintiff further alleges that Defendants knew Rumelia Capital was affiliated with illegal and fraudulent binary option scams. Compl. ¶¶ 24, 28-35. Moreover, Plaintiff alleges that when the illegal charges were placed on Plaintiff's credit card, Defendants "knowingly and improperly reviewed, authorized, [and] approved" the illegal charges. *Id.* ¶ 25. After the charges were posted, Plaintiff complained and sought a chargeback from Defendants. *Id.* ¶ 13. Plaintiff alleges that Defendants continued to make knowing omissions and misrepresentations regarding Rumelia Capital and the validity of the charges after Plaintiff contested the charges.[4] *Id.* ¶¶ 25-26. Thus, as pled, the alleged misrepresentations and omissions occurred *after* Rumelia placed the fraudulent charges on Plaintiff's credit card. Accordingly, Plaintiff cannot establish a causal relationship between any alleged unlawful conduct by

---

[4] Plaintiff alleges that Chase and Visa have stopped "accepting credit card transactions submitted by Rumelia Capital and similar illegal-based offshore binary option scams." Compl. ¶ 17.

Defendants and Plaintiff's loss. Stated differently, Plaintiff cannot demonstrate that Defendants' misrepresentations or omissions caused her to lose money because the charges were already made before Defendants even had an opportunity to make an actionable misrepresentation or omission.

Plaintiff contends that Defendants should have known that Rumelia Capital "was basically an offshore criminal enterprise before Plaintiff made any charges." Plf. Opp. at 10. Thus, Plaintiff appears to be arguing that Defendants had a duty to inform Plaintiff about Rumelia Capital even before she decided to invest in the binary option scam. For an omission claim to be actionable, a defendant must have a duty to disclose. *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009) ("Obviously, there can be no fraud, or reliance for that matter, if the defendant was under no obligation to disclose the information in the first place."). Plaintiff, however, does not point to any legal authority establishing a duty that required Defendants to disclose information about Rumelia to Plaintiff. Moreover, the Court is not aware of any duty that requires credit card issuers or payment networks to review a customer's financial decisions. Without an actionable duty, Plaintiff cannot state an CFA claim based on the omissions as alleged.

Plaintiff, therefore, fails to state a claim under the CFA. Accordingly, Count I is dismissed.

### 2. Common Law Fraud (Count III)

Plaintiff's fraud claim fails for similar reasons. To state a common law fraud claim, a plaintiff must plead (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) and intention that the other person rely on it; (4) reasonable reliance; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). Plaintiff does not establish that Defendants made any material misrepresentations or omissions with an intent that she rely on such statements and fails to establish reasonable reliance. As discussed, Defendants alleged misstatements and omissions were made after Plaintiff

6

suffered the loss, and there was no duty that required Defendants to inform Plaintiff about Rumelia Capital before she ever decided to make the investments.

Plaintiff relies on *Network Commodities, LLC v. Golondrinas Trading Co., LTD.*, No. 11-3119, 2013 WL 1352234 (D.N.J. Apr. 1, 2013) to argue that she properly pleads a claim for fraud. Plf. Opp. at 12-13. In *Network Commodities* the parties entered in a master agreement and then a series of shipping contracts under which the defendants were supposed to ship seafood from Ecuador after the plaintiffs made cash advances. *Id.* at 1. The plaintiffs alleged that after a certain point in time, the defendants had no intention of performing under the contract although the plaintiffs continued to make cash advancements. *Id.* Among other things, the court determined that the plaintiffs stated claims for fraud in the inducement of each separately negotiated agreement. *Id.* at *9. *Network Commodities* is inapposite, as the case would support Plantiff's position if she was suing Rumelia Capital rather than Defendants. Rumelia Capital is the alleged party who had no intent of performing although Plaintiff was still investing money. Plaintiff's common law fraud claim is dismissed.

### 3. Breach of Contract Claims

At the outset, the parties applied different law when analyzing Plaintiff's contractual claims. The cardholder agreement contains a choice-of-law provision stating that Delaware law applies to the cardholder agreement and Plaintiff's account. Compl., Ex. A at 6. Accordingly, Defendants initially used Delaware law to argue that Plaintiff's contract-based claims should be dismissed.[5] Defs. Br. at 16. While Plaintiff acknowledges that the cardholder agreement has a

---

[5] In their reply brief, Defendants maintain that Delaware law should apply but state that it is unnecessary to conduct a choice-of-law analysis at the motion to dismiss stage because Delaware and New Jersey law do not conflict. Defs. Reply at 9 n.4.

7

Delaware choice-of-law provision, she contends that New Jersey law should apply because, with respect to her contract claims, there is no conflict between Delaware and New Jersey law. Plf. Opp. at 14-15, 17.

In diversity cases, courts look to the choice-of-law rules of the forum state, here New Jersey, to decide which body of substantive law to apply when interpreting a contract provision. *Collins ex rel. Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). "New Jersey choice-of-law rules provide that 'ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.'"[6] *Id.* (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 130 N.J. 324, 341 (1992)). As a result, the Court will uphold the choice-of-law provision in the cardholder agreement and apply Delaware law to the contract-based claims.[7]

"It is a general principal of contract law that only a party to a contract may be sued from breach of the contract." *Gotham Partners, L.P. V. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002) (quoting *Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999)). Plaintiff's allegations only involve the cardholder agreement between Chase and Plaintiff; Visa is not a party to the agreement. *See* Compl. Ex. A. Accordingly, because Visa is not a party to the agreement at issue the contract-based claims are dismissed as to Visa.

i. **Breach of Contract (Count IV)**

Defendants contend that the breach of contract claim should be dismissed because Plaintiff fails to identify any obligations in the cardholder agreement that were actually breached. Defs.

---

[6] Although there are exceptions to this general rule (*Collins ex rel. Collins*, 874 F.3d at 184), the parties do not argue that an exception should apply here.

[7] The Court notes that despite the choice of law clause, both parties used New Jersey law to analyze Plaintiff's fraud-based claims.

8

Br. at 16-18. To state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that plaintiff performed its duties under the contract. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). A plaintiff must identify the specific contract clause that was breached. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006); *see also Shaev v. Adkerson*, No. 10436-VCN, 2015 WL 5882942, at *4 (Del. Ch. Oct. 5, 2015) ("Where a plaintiff fails to identify any contract provision that was breached, the count fails to state a claim upon which relief may be granted.").

Plaintiff maintains that Defendants breached contractual duties by improperly reviewing and approving illegal transactions, denying Plaintiff's entitlement to a chargeback, and continuing to hold Plaintiff liable for the charges she contested. Compl. ¶¶ 55-59. But rather than identifying specific provisions of the cardholder agreement, Plaintiff argues that Defendants breached various "fundamental contractual dut[ies]." Plf. Opp. at 16. Plaintiff's failure to identify specific contractual provisions is fatal to her claim. *See Shaev*, 2015 WL 5882942, at *4. Count Four, therefore, is also dismissed as to Chase.

### ii. The Implied Covenant of Good Faith and Fair Dealing (Count V)

Defendants argue that Plaintiff fails to plausibly plead a claim for breach of the duty of good faith and fair dealing. Like the breach of contract claim, Defendants contend that Plaintiff does not identify a specific implied contractual obligation that was breached. Defs. Br. at 18-19. Pursuant to Delaware law, every contract has an implied obligation of good faith and fair dealing which requires that the parties "act reasonably to fulfill the intent of the parties to the agreement." *Chamison v. Healthtrust, Inc.*, 735 A.2d 912, 920 (Del. Ch. 1999). To state a claim for breach of the implied covenant, a plaintiff must (1) identify a specific implied contractual obligation; (2) a

breach of that obligation; and (3) resulting damage to the plaintiff. *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009). "General allegations of bad faith conduct are not sufficient." *Id.* Plaintiff fails to identify which implied contractual obligation is at play. Plaintiff only pleads that Defendants owe a duty "pursuant to the numerous express and implied agreements and relationships between the parties." Compl. ¶ 62. Consequently, Plaintiff fails to state an implied covenant claim. *Kuroda*, 971 A.2d at 887 (dismissing implied covenant claim because plaintiff "failed to articulate a contractual benefit he was denied as a result of defendants' breach of an implied provision of the contract").

In her brief, Plaintiff argues that Defendants acted in bad faith because they did not inform Plaintiff that she was dealing with "nothing more than a criminal enterprise," and had Plaintiff been informed, she would have disputed the charges within required the 60-day window. Plf. Opp. at 18. Plaintiff cannot amend her pleadings by adding new details in her brief. *See Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 120 (D.N.J. 2017). But even if the Court were to consider these new allegations, Plaintiff still fails to state an implied covenant claim. First, general allegations of bad faith are insufficient. *Kuroda*, 971 A.2d at 888. Second, the cardholder agreement clearly sets forth Chase's obligations for addressing potentially fraudulent transactions and for responding the billing errors. An implied covenant claim "cannot be invoked to override express provisions of a contract." *Id.* Count V, therefore, is dismissed as to Chase.

### iii. Illegal Contract (Count II)

As pled, Count II, which is entitled "Consumer Contract Containing Unlawful Provision," appears to be an attempt by Plaintiff to invalidate the alleged fraudulent charges because of an unlawful provision in the cardholder agreement. Compl. ¶¶ 36-42. In her brief, Plaintiff clarifies that each of the fraudulent charges were made based on an illegal contract between Plaintiff and

Rumelia Capital. Therefore, Plaintiff continues, Defendants cannot seek to enforce a debt based on known illegal contracts. Plf. Opp. at 12. Again, Plaintiff cannot amend her complaint through her brief. *Janowski*, 259 F. Supp. 3d at 120. Moreover, Bulut offers no legal authority for her new theory that Chase is somehow responsible for a contractual relationship that she chose to enter into with Rumelia Capital. Given the fact that Plaintiff's new theories are unsupported, Count II is dismissed for failure to state a claim.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (D.E. 9) is **GRANTED** and the Complaint is dismissed. A court must grant leave to amend a complaint "absent evidence that amendment would be futile or inequitable." *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). An amended complaint would be futile if it "would fail to state a claim upon which relief could be granted." *Id.* at 115. Given Plaintiff's legal theories, the Court has serious concerns that any attempted amendment will be futile. However, because this is the first motion to dismiss, the Court will grant Plaintiff leave to file an amended complaint. Yet, in addition to her legal theories, Plaintiff must plausibly and accurately set forth her factual allegations. The Court has concerns that Plaintiff's Complaint attempted to obfuscate the underlying facts in this matter.

The dismissal is without prejudice and Plaintiff is granted leave to file an Amended Complaint. Plaintiff has thirty (30) days to file an Amended Complaint, if she so chooses, consistent with this Opinion. If Plaintiff fails to file an Amended Complaint, the dismissal will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: May 1, 2019

*[signature]*
John Michael Vazquez, U.S.D.J.