**Not for Publication**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SARAH A. BULUT, <br><br> *Plaintiff*, <br><br> v. <br><br> JP MORGAN CHASE BANK, N.A., et al., <br><br> *Defendants*. | Civil Action No. 18-9303 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

Presently before the Court is the motion of Defendants JP Morgan Chase Bank, N.A. ("Chase"); Visa USA, Inc.; and Visa, Inc.'s (collectively "Visa") to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 44. *Pro se* Plaintiff Sarah A. Bulut filed a letter in opposition, D.E. 47, to which Defendants replied, D.E. 48.[1] Plaintiff filed an additional letter, without leave of the Court, in response to Defendants' reply brief.[2] D.E. 49. The Court reviewed the parties' submissions and decides the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

---

[1] Defendants' brief in support of their motion to dismiss (D.E. 44-1) will be referred to as "Defs. Br."; Plaintiff's letter in opposition (D.E. 47) will be referred to as "Plf. Opp."; and Defendants' reply (D.E. 48) will be referred to as "Defs. Reply."

[2] Local Rule 7.1(d)(6) provides that sur-replies can only be filed with leave of the Court. Plaintiff did not seek leave in this instance. However, given Plaintiff's *pro se* status the Court will still consider Plaintiff's submission.

## I.    FACTUAL BACKGROUND[3] & PROCEDURAL HISTORY

This case concerns allegedly fraudulent purchases that Plaintiff made with her Visa-brand credit card that was issued by Chase.  Unfortunately, it appears that Plaintiff fell victim to a financial scam and lost a substantial amount of money.  Plaintiff states that while she takes accountability for her decisions, she believes that Defendants "share in the accountability of the financial outcome of [Plaintiff's] situation."  June 4 Ltr. at 1.

The initial Complaint was filed on May 16, 2018.  In it, Plaintiff asserted claims for, among other things, a violation of the New Jersey Consumer Fraud Act and breach of contract.  D.E. 1. On May 1, 2019, this Court dismissed Plaintiff's Complaint for failure to state a claim but granted Plaintiff leave to file an amended complaint.  *See* May 1 Opinion, D.E. 20.  On June 4, 2019, Plaintiff filed a letter "clarify[ing] any misunderstanding or misinformation of the facts of [her] case."  June 4 Ltr. at 1.  In the letter, Plaintiff provides additional factual support and attempts to further explain her claims.[4]  Plaintiff filed a second letter July 16, 2019, seeking to further amend

---

[3] The factual background is taken from Plaintiff's Amended Complaint, as well as attached exhibits.  When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the Complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  A court may also consider any document integral to or relied upon in the complaint.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)).  Here, Defendants maintain that the Court may also rely upon the cardmember agreement to decide this motion, as it referenced in the Amended Complaint.  Plaintiff does not appear to disagree.  Moreover, Plaintiff provided a copy of the cardmember agreement as an exhibit to the initial Complaint.  *See* Compl. Ex. A.  Accordingly, the Court also considers the cardmember agreement.

[4] Plaintiff submitted the June 4 Letter *pro se* and stated that her attorneys had "withdrawn their legal representation," leaving Plaintiff to represent herself.  June 4 Ltr. at 1.  Per the Court's instructions, Plaintiff's attorneys subsequently filed a motion to withdraw, D.E. 26, which was granted on July 25, 2019.  D.E. 38.  Accordingly, Plaintiff is now proceeding in this matter *pro se*.

her Complaint by providing additional facts and documents.[5]  July 16 Ltr. at 1.  Accordingly, the

Court treats Plaintiff's June 4 and July 16 Letters, together, as the Amended Complaint.  The

Amended Complaint, however, does not clearly explain what causes of action Plaintiff is asserting.

Plaintiff appears to assert breach of contract claims because Defendants failed to adhere to their

chargeback rules or conduct an adequate investigation.  June 4 Ltr. at 8.  Plaintiff also attempts to

clarify certain claims that were dismissed in the May 1 Opinion.  *Id.* at 4-7  As a result, while not

entirely clear, the Court construes the Amended Complaint as repleading the five claims that were

asserted in Plaintiff's initial Complaint.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails

"to state a claim upon which relief can be granted[.]"  For a complaint to survive dismissal under

Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery

will uncover proof of her claims."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir.

2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and

legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements

---

[5] In the July 16 letter, Plaintiff states that she is also asserting claims against Grey Mountain
Management, Rumelia Capital, and various individuals associated with these entities.  July 16 Ltr.
at 2-3.  Grey Mountain Management and Rumelia are the entities that defrauded Plaintiff.  It is not
clear, however, what claims Plaintiff is asserting against these Defendants.  If Plaintiff intends to
assert claims against these Defendant, any amended pleading must clearly explain the claims it
asserts against each Defendant.

of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). Pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Therefore, an allegation of fraud must be supported by factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). This heightened pleading standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted). In addition, the requirements of Rule 9(b) apply to claims brought under the New Jersey CFA. *See Schiano v. MBNA*, No. 05-1771, 2014 WL 1430034, at *5 (D.N.J. Apr. 9, 2014).

### III.    ANALYSIS

#### 1.  Breach of Contract

The Court dismissed the breach of contract claims against Visa in the May 1 Opinion because Visa is not a party to the cardmember agreement. May 1 Opinion at 8. The Amended Complaint fails to allege that Plaintiff and Visa were parties to any contract. Thus, the breach of contract claims remain dismissed as to Visa. *See Gotham Partners, L.P. v. Hallwood Realty*

*Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002) (quoting *Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999)) ("It is a general principal of contract law that only a party to a contract may be sued for breach of that contract.").[6]

Defendants also contend that the breach of contract claim should be dismissed because Plaintiff fails to identify any obligations in the cardmember agreement that were actually breached. Defs. Br. at 5-9. To state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that plaintiff performed its duties under the contract. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). A plaintiff must identify the specific contract clause that was breached. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006); *see also Shaev v. Adkerson*, No. 10436-VCN, 2015 WL 5882942, at *4 (Del. Ch. Oct. 5, 2015) ("Where a plaintiff fails to identify any contract provision that was breached, the count fails to state a claim upon which relief may be granted.").

Plaintiff maintains that Chase breached its contractual duties by failing to apply the appropriate chargeback codes to her account; Plaintiff identifies five such chargeback codes. June 4 Ltr. at 5-6. The cardmember agreement sets forth procedures for Chase and cardholders to follow when a cardholder is "dissatisfied with the goods or services" purchased with her credit card, whereby a cardholder may not ultimately be required to pay the full amount due. *See* Compl. Ex. A at 7. The decision that a cardholder is not liable for the full amount is presumably what Plaintiff refers to as a chargeback. The cardmember agreement, however, is silent as to how Chase decides whether to issue a chargeback. Moreover, while Plaintiff refers to specific chargeback "rules,"

---

[6] As it did in the May 1 Opinion, the Court applies Delaware law to the contract-based claims because of the choice-of-law provision in the cardmember agreement. May 1 Opinion at 8.

she fails to point to any document indicating what the rules are or that Chase was contractually required to apply such rules to her account.  Because Plaintiff fails to identify a relevant contractual provision, her breach of contract claim fails on these grounds.

Plaintiff also alleges that Chase breached the cardmember agreement because it failed to conduct a proper investigation after Plaintiff alerted Chase of the alleged fraud.  *See* June 4 Ltr. at 3.  Plaintiff does not allege that Chase failed to investigate her complaints, as required under the cardmember agreement.[7]  Rather, Plaintiff contends that Chase's investigation was unsatisfactory because Chase failed to reveal that Plaintiff invested in a fraudulent scam.  *Id.*  But the cardmember agreement only provides that Chase will "investigate whether or not there has been an error." Compl. Ex. A at 7.  Although Plaintiff is dissatisfied with the investigation that occurred, this does not amount to a breach of the cardmember agreement.  Consequently, Plaintiff also fails to state a claim for breach of contract based on these grounds.

### 2.  Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff also fails to state a claim for breach of the implied covenant of good faith and fair dealing.  Pursuant to Delaware law, every contract has an implied obligation of good faith and fair dealing, which requires that the parties "act reasonably to fulfill the intent of the parties to the agreement." *Chamison v. Healthtrust, Inc.*, 735 A.2d 912, 920 (Del. Ch. 1999).  To state a claim

---

[7] In certain sections of Plaintiff's opposition, she appears to argue that Chase did not actually investigate Plaintiff's fraud complaints.  *See, e.g.*, Plf. Opp. at 4.  Plaintiff cannot amend her pleading by changing or adding new facts in her opposition brief.  *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)).  In addition, the exhibits to the Amended Complaint demonstrate that Chase did investigate her claims.  *See, e.g.*, June 4 Ltr. Ex. A at 2 (explaining that Plaintiff was informed that Chase attempted to call Grey Mountain Management but was unable to reach the merchant).  Again, although Plaintiff is unhappy with the investigation that was ultimately conducted, this does not amount to a breach of the cardmember agreement.

for breach of the implied covenant, a plaintiff must (1) identify a specific implied contractual

obligation; (2) a breach of that obligation; and (3) resulting damage to the plaintiff. *Kuroda v.*

*SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009). "General allegations of bad faith

conduct are not sufficient." *Id.*

In the May 1 Opinion, this Court dismissed Plaintiff's implied covenant claim because

Plaintiff failed to identify any specific implied contractual obligation. May 1 Opinion at 9-10.

Plaintiff still fails to identify which implied contractual obligation Chase breached. Plaintiff

alleges that Chase "failed to do the right thing," June 4 Ltr. at 8, and is "complicit with the scam"

carried out by Grey Mountain Management and Rumelia Capital, July 16 Ltr. at 1. As discussed,

general allegations of bad faith are insufficient. *Kuroda*, 971 A.2d at 888.

Plaintiff also alleges that Chase failed to act with due diligence or conduct a thorough

investigation. June 4 Ltr. at 3, 7. Plaintiff believes that Chase's investigation was not thorough

because Chase "failed to uncover the truth" -- that Plaintiff invested in a predatory and fraudulent

investment scheme. *Id.* at 3. But the fact that Plaintiff disagrees with the results of Chase's

investigation does not necessarily mean that Chase's review was not thorough. Moreover, "the

covenant is a limited and extraordinary legal remedy" and "does not apply when the contract

addresses the conduct at issue." *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbox*

*Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) (internal citations omitted). Here, the

cardmember agreement provides that Chase will conduct an investigation under certain

circumstances, *see* Compl. Ex. A at 5-7, and Chase appears to have done just that, June 4 Ltr., Ex.

A at 2 (acknowledging that an investigation occurred). Given the limited scope of the implied

covenant and the fact that Chase performed as required under the agreement, Plaintiff fails to state

a claim for breach of the implied covenant of good faith and fair dealing.[8]

### 3.  New Jersey Consumer Fraud Act

Plaintiff's Amended Complaint also asserts a claim under the New Jersey Consumer Fraud

Act (CFA), N.J.S.A. 56:8-2, 56:8-19.  Specifically, Plaintiff alleges that Defendants violated the

CFA because they failed to approve Plaintiff's request for a chargeback.  June 4 Ltr. at 5.

The CFA "seeks to protect consumers who purchase goods or services generally sold to

the public at large."  *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006).  As

"remedial legislation," the Act "should be construed liberally."  *Int'l Union of Operating Eng'rs*

*Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007).  To state a CFA claim,

a plaintiff must allege "(1) unlawful conduct; (2) ascertainable loss; and (3) a causal relationship

between the unlawful conduct and the ascertainable loss."  *Id.*  Unlawful conduct is defined by the

Act as "any unconscionable commercial practice, deception, fraud, false pretense, false promise,

misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with

intent that others rely upon such concealment, suppression or omission."  N.J.S.A. 56:8-2.

Generally, unlawful conduct falls into three categories: (1) affirmative acts; (2) knowing

omissions; and (3) regulation violations.  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994).

Here, Plaintiff fails to identify any acts or omissions that could amount to unlawful

conduct.  To the extent Plaintiff alleges that the affirmative act is Chase's refusal to provide her

---

[8] Count Two of Plaintiff's original Complaint was entitled "Consumer Contract Containing Unlawful Provision."  Compl. ¶¶ 36-42.  The Court was unsure what Plaintiff was actually pleading in Count Two, and construed the Complaint as pleading a claim for an illegal contract. May 1 Opinion at 10-11.  In the June 4 Letter, Plaintiff clarifies that in Count Two, she is alleging that Chase "was negligent in applying the normal chargeback rules to [her] case."  June 4 Ltr. at 6.  Thus, Count Two appears to be duplicative of Plaintiff's contract-based claims and is also dismissed.

with a chargeback, this conduct is insufficient.  The cardmember agreement provides that if a

cardholder is dissatisfied with goods or services purchased with the credit card, the cardholder

"*may* have the right not to pay the remaining amount due on the purchase."  Compl. Ex. A at 7.

(emphasis added).  Further, the purchase at issue "must have been made in [the cardholder's] home

state or within 100 miles of [the cardholder's] current mailing address."  *Id.*  Plaintiff, who lives

in New Jersey, pleads that Grey Mountain Management and Rumelia Capital are located in Ireland.

July 16 Ltr. at 2.  Thus, Plaintiff's purchases do not satisfy a basic, threshold requirement.

Defendants' failure to not provide Plaintiff with the requested chargeback, therefore, does not

equate to an unlawful affirmative act.  And to the extent Plaintiff relies on an omission, this Court

already determined that Defendants did not have any duty to disclose information about the fraud

scheme to Plaintiff.  May 1 Opinion at 6.  Accordingly, Plaintiff fails to state a CFA claim.

### 4.  Common Law Fraud

Finally, Plaintiff asserts a claim for common law fraud against Defendants that is also based

on Chase's refusal to give Plaintiff a chargeback.  June 4 Ltr. at 6.  To sufficiently plead a claim

for common law fraud a plaintiff must allege there was (1) a material misrepresentation of a

presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) and

intention that the other person rely on it; (4) reasonable reliance; and (5) resulting damages.

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).  Here, Plaintiff does not identify any

misrepresentations or omission made by any Defendant.  Accordingly, Plaintiff fails to state a

common law fraud claim.

### IV.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (D.E. 44) is **GRANTED** and

the Amended Complaint is dismissed.  A court must grant leave to amend a complaint "absent

evidence that amendment would be futile or inequitable." *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  An amended complaint would be futile if it "would fail to state a claim upon which relief could be granted." *Id*. at 115.  Given Plaintiff's legal theories, the Court has serious concerns that any attempted amendment will be futile.  However, given Plaintiff's *pro se* status, the Court will grant Plaintiff leave to file an amended complaint.  If Plaintiff files an amended pleading, however, she must clearly explain what causes of action she is asserting as to each Defendant.

Thus, the dismissal is without prejudice and Plaintiff is provided with thirty (30) days to file an amended complaint, if she so chooses, consistent with this Opinion.  If Plaintiff fails to file an amended complaint, the dismissal will be with prejudice.  An appropriate Order accompanies this Opinion.

Dated: April 29, 2020

_____
John Michael Vazquez, U.S.D.J.